Appellant v. Drug Enforcement Agency and its agent et al. Ms. Sheketoff for the appellant, Mr. Birch for the appellees. Ms. Sheketoff is a former law clerk of this court and an example for everybody who I just spoke to. Nice to see you. May it please the Court, Julia Fung Sheketoff as appointed Amicus Curiae for Appellant. The habeas channeling rule of Heck v. Humphrey bars only those prisoner suits where what the plaintiff must establish in order to prevail in his civil claim would demonstrate the invalidity of his conviction. As the Supreme Court specifically said in footnote 7 of Heck, because of the many exceptions to the exclusionary rule and because of harmless error analysis, a suit challenging an unreasonable search or a coercive interrogation does not require the plaintiff to prove his conviction is invalid and therefore it may proceed. The DEA makes two arguments why this suit isn't governed by that general rule, but both are wrong. First, the language and application of the Heck standard make clear that the proper approach focuses on what the plaintiff must prove in order to prevail in his civil suit and whether that proof alone is in conflict with the criminal conviction. Second, although some of the relief that Mr. Bomdod seeks may be barred, Mr. Bomdod also seeks multiple forms of relief that are proper here, including compensatory damages for injuries stemming directly from the search and interrogation, as well as nominal damages, punitive damages, and declaratory relief. Can I ask you, I understand the point about Heck. What happens if a plaintiff decides, files for habeas, decides that he really would prefer to have the decision made by some other three-judge court in another circuit and brings a 1983 case on the Fourth Amendment issue or on the Fifth Amendment issue in that case as a matter of forum shopping? Doesn't like the panel that he drew, quickly files in another and tries to get a result there. Would that decision be preclusive? My understanding is that a decision in a 1983 Bivens action would not be preclusive in a habeas action because the parties are different and not in privity with each other. Because the government isn't the defendant in the Bivens suit. Correct. The language and the application of the Heck standard. Can I ask you something about Stone v. Powell, which held that Fourth Amendment exclusionary rule claims simply can't be brought as a state habeas at all. Does that mean then, and I believe it applies to federal habeas review as well, would that mean then that just as a categorical matter, these types of claims can never fall within the Heck bar? Because they can't be brought there, they necessarily can't be brought here, even if the nature of the arguments goes right to be key or the only evidence in the case. I think one could certainly make that argument, and indeed I think some of the justices of the Supreme Court have made that argument. I think it certainly goes to show that it's unlikely that this kind of case is within the core of habeas, since this kind of claim as a general rule can't even be brought in habeas. But our argument is, even if a Fourth Amendment claim could be brought in habeas, for example, because the litigant did not have a full and fair opportunity to litigate the case in the criminal proceeding, because of the presence of the additional questions of whether harmless error analysis applies and whether there are exceptions to the exclusionary rule. There's no dispute here that he had a full and fair opportunity to raise this Fourth Amendment claim in his trial? That's correct. Right, so this would then be covered by the Stone v. Powell bar. It's interesting, because you argued for a categorical approach, and this seemed to be the biggest category one could have, is falling outside of Heck. I certainly think that would be a reasonable ground to conclude that these kinds of claims cannot be barred under Heck. In addition, the language and application of the Heck standard show that the proper approach focuses on what the plaintiff must prove. Heck stressed the word necessarily, and the Supreme Court in Nelson, again, emphasized that the Court stressed necessarily for a reason. And in footnote 7 of Heck, the Court demonstrates what it means to necessarily imply the invalidity of a conviction. It said that because of harmless error analysis and because of exceptions to the exclusionary rule, a claim for an unreasonable search categorically would not necessarily imply the invalidity of a conviction. If Heck applies categorically to the Fourth or even Fifth Amendment claims, for a Fourth Amendment excessive force type claim, how do we know when the statute of limitations starts running? Does that start running categorically as well, uniformly to everybody that has a Fourth Amendment claim? I believe that in Wallace v. Cato, the Supreme Court held that yes, the statute of limitations for an unreasonable search claim would begin at the moment of the unreasonable search, because at that moment, the plaintiff has suffered injury. So is he within the statute of limitations? I don't believe that that argument has ever been raised before. And so if he was not, that argument has been waived. Well, we haven't gotten to the stated waiver yet, have we? Correct. But that should not be a grounded decision here. That was not a decision below. That hasn't been briefed here. And I'm not aware of whether or not there could be a valid statute of limitations argument here. What is your position on whether Heck is jurisdictional? My position is that it is not a jurisdictional argument. The Court has never – or, sorry, it is not a jurisdictional ground. But the Court has never – the Court has never said that it is. And it's been treated as a defense, something that the defendant must prove and raise. Well, we've got an old case from the 1990s in which we did hold it was jurisdictional. Well, if Heck is, in fact, jurisdictional, then that's a further reason why the Court should first address that question and, if necessary, remand to the district court to decide the merits question and the preclusion questions in the first – So I thought Heck decided this question. Heck says, we do not engraft an exhaustion requirement upon Section 1983, but rather deny the existence of a cause of action. Isn't that it? And that resolved the issue. It's a cause of action question, not a jurisdiction question. That is my understanding. And that's what the lower court did. Dismissed it. That's what Judge Walton did, dismissed it on failure to state a claim. I'm sorry, I can't hear you. Judge Walton dismissed it on failure to state a claim. I'm just simply pointing out we do have this old case that we have held as jurisdictional. Yes. The judge below dismissed it for failure to state a claim. Do you have – what about the question on the merits that you did supplemental briefing on? Mr. Bondat has colorable arguments why his case is distinguishable from Supreme Court precedent that suggests, as a general rule, victims of undercover sting operations may not have a – Mr. Bondat here had a patient – a doctor-patient relationship with the undercover officers, and by virtue of that relationship, he had special obligations to them, including the obligation to put their interests above his own, to continue to treat them, to interact with them, to volunteer information to them, and to answer their questions. Did he have an obligation to unlawfully prescribe oxycodone? He did not. Simply the fact that he may not have followed his ethical obligations in one particular way does not mean that he did not feel bound by his ethical obligations in other ways. And the fact that he had these additional obligations that distinguish him from the average citizen who is unencumbered in his choices as to whether – Is there any case that supports this proposition? I have not found any binding precedent that suggests – that supports this, except the United States Supreme Court and Jones, five justices together, agree that the assumption of the risk rationale should not be blindly – or is not appropriate in all contexts. That's a GPS case, right? That's correct. What I meant was, is there any case on a doctor-patient relationship that would support your proposition? I have not found any such case. So you know that the Ninth Circuit has ruled precisely to the opposite, and that that case was cited in his habeas case, right? That's correct. The Ninth Circuit has gone the other way, but I still believe that there are colorable grounds to distinguish Mr. Bondad's case. The Ninth Circuit's opinion does not bind this court here, and there's no reason that the court needs to rush into that question rather than address the issue in the normal course, if and when the district court reaches that question on appeal in the future. The question that's properly before the court right now, that was decided below, that's been briefed in the normal course here, is the heck question. I do not think it's, since the statute obligates us to dismiss frivolous cases, aren't we bound by the statute to address that question? Respectfully, I don't think Mr. Bondad's claims are frivolous. Because of his unique situation, his unique professional obligations, and because of Jones and the Supreme Court's admonition, or five justices of the Supreme Court's expression, that the assumption of the risk rationale is not always appropriate. I think those things together provide ground. Do you think Jones overrules Perkins or White? I don't think it overrules those cases. I think it merely suggests that those cases, the rationale of those cases, should not be extended to new context where the rationale is not appropriate. And here the rationale is not appropriate. This case, am I correct, this case involved both video and audio recordings? That's according to the allegations of the complaint, which the court must accept as true at this stage, yes. And White was only audio recordings. That's my understanding. I believe in White it was actually just a radio transmission of audio. But there were no video images that were covered. That's correct. Does that claim to the Jones analysis? Are videos more intrusive than audios? I certainly think there's a strong argument that, yes, Jones makes clear that the mere quantity of information can change the assumption of risk rationale and can make it inappropriate to apply that rationale. That's the quantity of information about the person. Do you think if it was color TV versus black and white TV would make a difference? I think it would be hard to say. But that's why the court shouldn't wade into those tricky questions in this posture. Does this one really seem like a tricky question to you, the difference between an audio recording and a video recording? I think it certainly provides grounds under the five justices' opinions in Jones to at least distinguish this case from White. It would be an expansion of White. Yes, I think it would absolutely be an expansion of White, particularly given Mr. Bonda's unique obligations to his patients. Do you have a view on what, if you were to prevail, what would be appropriate here? Would you go back and then simply involve service on the United States government and then they could bring a 12B6? Or would 12B6 be over and done with? Because you had a non-adversarial 12B6, and that review has been here and the government has briefed here, and you would go back and would that open the door to getting all the way to summary judgment and discovery? Or what happens in this procedural posture? I believe if the court decided the heck issue in our favor and then remanded, I believe at that point the district court could entertain 12B6 motions. The court dismissed here sua sponde, so I don't think I would preclude their motions to dismiss. Again, raising the merits issue in the normal course, if and when the government chose to do so. Are you familiar with the Wakumawa case that the Ninth Circuit decided in March of 2013? No. So in that case the court expressly rejects the distinction between audio and visual, including post Jones. Again, this is the same circuit in which his habeas is being held. Does that make a difference? No. I think the court should apply the law of this circuit, and the court is not bound. Again, to my understanding, no decision here would be preclusive in a future habeas action, and under binding precedent of this court, nothing squarely demonstrates that Mr. Bondad is bound or assumes the risk given these particular facts in his case. Further questions? Okay, thank you. Thank you. We'll hear from the government. And to be completely even-handed, it's nice to see you, Mr. Birchall. Thank you, Your Honor. It's nice to be here. May I please support Alan Birch on behalf of the Drug Enforcement Administration? I'll take the merits briefly first before moving on to the other two issues. None of the cases that either party has uncovered has specifically addressed the argument that Mr. Bondad would make about the invasion of a medical office, but there are numerous cases of doctors being convicted on the basis of undercover agents posing as patients, and so I would suggest that the ---- Does that involve video surveillance? I don't know if any of them involve video. I know that most of them involved at least audio. I don't know if any of the ones I cited also involved video. But there's been numerous opportunities. The Third Circuit had both recognized that video surveillance is different than audio surveillance, and the Second Circuit called it an expansion of white. The Third Circuit said it's a greater intrusion than audio's. And so the question is, is this at least an open issue? Well, Mr. Bondad had the opportunity to raise that in his own criminal conviction and his own appeal and did not. I take that as a sign, as with the other cases, that counsel determined that the argument was not colorful enough to be worth raising. What does that have to do with this action, the business action? Sorry? I'm sorry, he didn't raise it in his ---- No, I'm saying he did not raise it. He had the opportunity to raise the argument in his own appeal, just like the other cases. Are you arguing collateral estoppel? Is that what you mean by he could have raised it there? No, I'm suggesting that the point to be made is that the argument is not colorful enough to even have been attempted by his attorney. There are an awful lot of claims that are missed in criminal cases that end up being very colorful. I don't know that that's a reliable rule. That's the state of the law, Your Honor, in terms of what we can glean from it. It may not be conclusive in that, but that's what I think is the state of the law with respect to this argument in Fourth Amendment, that it hasn't been made, it's never been, or it hasn't been successfully made, and there have been opportunities to have made it. And so that bars Bivens' 1983 action? This is on the merits, Your Honor. I'm making a comment about the strength of the merits. Of his? Of his claim, right. My only question for you is whether it's different than Illinois versus White, when it's video rather than audio. Not materially in terms of the strength of his Fourth Amendment claim, no, Your Honor. But it's an expansion of White. Not one that would lead to a different result in the government's view. Does the government think there's any greater invasion of privacy involved in videos than audio or radio transmissions in White? Conceivably there could be, yes. Are there or not? I think it would depend on the nature of the video and the audio. Well, the whole rationale in White was that, look, you invite people in, they could take notes while you're talking and go out and repeat it. But when it comes to video, people actually aren't capable of recording everything that can be seen on a video and then recreating it unless they're really good sketch artists as soon as they go outside. So you are actually capturing more than a person would expect they're capturing by inviting someone into their house. So that could be the argument. As a general matter, I'm doubtedly correct. But on any given case, it would certainly depend on the quality and the scope of the respective recordings. There's not a lot to be ‑‑ I mean, I don't think there's much more to be said about the state of the case law with respect to doctor's offices in particular. That's the only point I'm trying to make. And to the extent that, you know, there certainly isn't anything supporting the plaintiff's position that this would make a material difference and that it should ‑‑ that the case is, in fact, colorable in the merits. Well, there is case law on the video audio distinction, and both the Fifth and the Second Circuit considered it and rejected it, saying there's no distinction between the two for purposes of the Constitution. And there's the Ninth Circuit that's done the same. So there are at least three circuits. As far as I know, the only ones that have considered it have all rejected that there's any difference between the two. Well, that would certainly support the government's position. Thank you, Your Honor. With respect to the Heck question, the footnote 7 of Heck itself seems to attract a lot of attention. And I would submit that there are two reasons why this strongly supports the government. The first is the last sentence sets forth that the plaintiff needs to demonstrate a separate pathway of causation other than the harm of being convicted. What do you do with the fact that Stone v. Powell says these claims categorically can't be raised in habeas? I think that at that level of generality, that's an overstatement of the language. The Fourth Amendment exclusionary rule cases cannot be brought as a categorical matter in habeas. So how could they ever implicate the Heck rule? Well, I'm not familiar enough with that whole thing, Your Honor. It would certainly contradict the language in Heck itself. Heck was a Fourth Amendment case. And the facts in Heck I think are very illustrative because in Heck the claim was that evidence had been destroyed and that sculpted evidence had been destroyed and that the voice identification procedure used at trial was defective. And both of those claims are subject to the same sort of argument that Dr. Bondod makes here, that, well, it's possible I could have been convicted on the basis of other evidence. And yet in Heck there was no remand for further consideration of these principles that were mentioned, Fourth Amendment principles mentioned in the footnote 7 about independent discovery or independent source and inevitable discovery. And that suggests that it further supports the government's reading that the Heck issue is, as the Chief Judge pointed out, a question of whether there's a cause of action. This is plaintiff's responsibility to establish a cause of action. It's not an affirmative defense. It's not something that the government is required to prove up on facts. This is a defect ultimately in his pleading. He had an opportunity to correct the defect after the dismissal. If people have to show case by case that it doesn't affect their, it wouldn't impact the validity of their conviction, would that mean in the DNA cases after the Clisher case that the more innocent you are, the less likely you're going to be able to bring a DNA claim? I'm sorry, I didn't catch the very first word of your question. Sorry. So your argument is that we have to look at a case by case to see what the impact of the claim would be on the conviction. So if you're challenging all the key evidence or the central evidence in a case and you're saying that should have been suppressed, that would necessarily impugn the validity of the conviction. That's my understanding of your position, not to have the categorical rules that Mr. Bondad's arguing. Right. My question is in the Switzer case where they said you can bring a DNA claim, a claim to seek DNA, my concern is that if we had a case by case analysis that in those cases where the DNA would show innocence, where the evidence was thin and DNA could make all the difference, the more innocent you are, the less likely you are to be able to bring the claim. Your Honor, I think the answer is that it would be resolved by an application of recognizing that the burden is, for lack of a better word, is on the plaintiff to establish the facts to show that the civil action should be allowed to go forward. Right. They had virtually no proof, just enough. Apparently it got past the jury. But I'd like to have the DNA evidence, even though you don't get it. No, I think that if the – well, in the Switzer, the connection was deemed too tenuous to undermine the conviction because the evidence that the plaintiff wanted to gather could have gone either way. It could have exonerated him or could have ended up with further proof. And so the logical connection there was severed and that was enough to allow it to go forward. But as demonstrated, for example, in the Nelson case, where the prisoner actually pled facts that would show the independent path, that would show that this is severable. In this case, in Bob Dunn's case, he has not proven any facts that would give you a separate path to the causation to a different harm. And what about Nelson makes you think that that's necessary in the Fourth Amendment area? Nelson says, even so, we're careful in Heck to stress the importance of the term necessarily. For instance, we acknowledge that an inmate could bring a challenge to the lawfulness of a search pursuant to 1983 in the first instance, even if the search revealed evidence used to convict the inmate at trial, because success on the merits would not necessarily imply that the defendant's conviction was unlawful. That sounds like quite categorical. It sounds like they're saying that in a search case, you can do it because it's not necessarily. The categories are reading and Nelson is far beyond what was necessary in Nelson to decide Nelson. Maybe so, but we've said that dicta, unlike our own dicta, dicta from the Supreme Court governs us. But that passage quotes and relies on the footnote seven in Heck, and I think that that's where you need to go back to understand what they're talking about. In particular, the language at the very end of that very footnote that puts the burden on the plaintiff to show a separate pathway of causation to a separate injury, an injury apart from the conviction. That's on the, isn't that, that part is about the damages question. That is the money question and what it is they're complaining about, isn't it? No, Your Honor, it's about the injury. Right, which injury, which injury, so. He has to have a separate injury. Correct, and here they have a separate injury. No, they have not put a separate injury here. And why do you say that? Because that's the fair reading of his complaint. I think the complaint ties all of the harm to the extent that it declares a harm, to be the harm from the agents showing up illegally at his office and taping and. . . Well, the part that Heck is concerned about is conviction, not the search of the office. The issue, you know, I'm going to put it this way. Imagine that there was an unlawful search and the person was never convicted, right? You wouldn't have a habeas claim. That's right. Impossible, right? That's evidence, yes. That's the Bidens case, exactly. That's exactly right. So what they're talking about in Heck is a situation. . . You can't claim the injury of actually being convicted, but you can claim everything up to the conviction and things that are unrelated to the time you have to spend in jail. Right, but he has no factual basis for any of that here. He doesn't have, for example, allegations that the DE agents in the waiting room told other patients that this guy is a crook and a quack and he's going to go to jail. And that would be prior to his arrest. I get it, but now we're at the complaint stage. How much has to be pled in a pro se complaint in order to get that point? It seems we're supposed to give considerable latitude here, liberally read. Is that right? It's a pro se complaint. He wasn't able to elaborate on the complaint. He wasn't able to say exactly what the injury was. None of that's necessary in a complaint. Yes and no, Your Honor. He had an opportunity to seek leave to amend even after the dismissal. This Court's jurisprudence recognizes that, particularly in dismissals that go on Iqbal grounds that your complaint was insufficient because it didn't plead enough facts. He indeed sought reconsideration and merely said, I don't mean to challenge my conviction. But he failed to provide any additional factual basis that would establish a separate causation. Once there is put into the record the notion that he's been convicted, the fact that he's been convicted, and that's established, then the burden, for lack of a better word, shifts to the plaintiff to explain why his claim is not. There's no burden issue here at all. We're stuck with whatever he has on the complaint. It's an issue of demonstrating a cognizable cause of action. That is what the whole core basis of the heckling of cases is all about, is what is a cognizable cause of action. And so this is, as you mentioned in your questioning to Yamikas, this is a question of whether he has a cause of action. It is a pleading issue. And once this is put into issue, I would suggest the procedure follows similar to the procedure for standing. Not that this is a jurisdictional issue. I agree with Judge Henderson. I think it's not a jurisdictional issue at all. But the procedure is, once this is put into issue, he needs to provide facts through supplemental pleading or evidence upon which the court could find a separate causation. No, I'm not following. Why, when the issue is what's on the face of the complaint, would anybody have to supplement the complaint? I thought the whole point would be he can't supplement the complaint. No, he could supplement the complaint by providing additional facts to show that he has a separate pathway to causation. There was nothing that barred him from doing that, even after dismissal. The case law here on Iqbal dismissals, which is parallel to what we have here, dismissal without prejudice, if that's the grounds that he's allowed to seek leave to amend on the basis of a supplemental or amended complaint. The question is whether dismissal in the first place was appropriate. There's no requirement to do any of the supplementation if it was not appropriate. Well, here he put into evidence, he put into his complaint that he was convicted, and he was convicted of overprescribing to DEA agents who came and posed as patients. And his claim is that they violated the Constitution by coming without his consent or a warrant. Right. That's sufficient. So isn't it enough? Imagine he had not been convicted. It would certainly be enough to say that agents came into my house or came into my office without a warrant, and imagine a warrant were required. That would be more than enough to state a cause of action, wouldn't it? Yes, similar to Bivens, of course. All right, so here he is saying they came into his office without a warrant, and then eventually he's convicted. That sounds like two different kinds of injuries. That is the unlawful search. But he does not establish any facts that would support a separate basis for causation, either a separate injury or a separate source. And so he has no separate cause of action other than the injury flowing from being arrested and then convicted. So isn't it an automatic injury to have that is one in which you don't have to prove further injury to have somebody enter your home without a warrant, unlawfully without a warrant? Isn't that on its face an injury, regardless of how much you might get for it? It may well be, but this was not entering his home, Your Honor. No, but we're assuming here that it's unlawful to have entered his doctor's office. For purposes of his claim, we're going to assume the merits of his claim. That would be a standing-type analysis. No, but we're on the question. Assuming he has a claim that is a claim that survives heck, I want to separate the heck issue from the issue of whether or not he has a Fourth Amendment claim. Assume for the moment he has a Fourth Amendment claim. Assume we're going to consider the heck issue first. Your claim here is that he hasn't shown any injury that's severable from the conviction, correct? And that's the reason you say heck bars this, right? Right. And what I'm asking is, if a complaint says you unlawfully entered my office without a warrant, isn't that a claim of injury separate from the fact that and I was convicted on the basis of that evidence? Well, he would need facts to show an injury. And simply saying I was harmed is a legal conclusion. And he would need facts, something like what I said earlier, something that would show I was harmed by their harming my business by scaring away my customers. Why do you need anything other than to say the government unlawfully entered my office? And that is a per se injury for which I might only get nominal damages, but I would still get damages separate from whether I can say it harmed my business or anything else. But I would still take that as factually conclusory of what the injury is. But I guess what I'm asking, isn't it true as a matter of law, for example, in the First Amendment area I know for sure it is, that a violation of one's First Amendment right is a nominal injury regardless of whether you can prove any actual damages from it, right? And I believe the same is true. I do a little research, but my guess is exactly the same is true of a Fourth Amendment violation. I'm not familiar with that enough to know for certain, but I doubt that it would apply in the medical office as opposed to the home. The privacy protections at the medical office would undoubtedly run towards the patient far more strongly than the doctor. Well, in that case he wouldn't have any Fourth Amendment rights anyway. Well, I think that may be why on the merits we haven't seen this argument being made. All right. Well, those are two separate questions. Of course. But they're not entirely logically comparable. Further questions? Okay. We would ask the Court to affirm. Thank you. Can I ask you to follow up on that question? Does the complaint state an injury from the search as separate from the conviction? And is it a per se injury or some other kind of injury? Mr. Vamdas is a per se litigant, and as such, he is entitled to a liberal construction of his complaint. Construed in that way, his complaint does allege injury for harm stemming directly from the search and interrogation. The injury for, for example, emotional distress, humiliation, that is quite obviously available for a Fourth Amendment claim, as Bivens itself makes clear that's the kind of injury at stake in that case. As you said, Judge Garland, he requests nominal damages as well as punitive damages and declaratory relief. All of that relief is properly available in this Bivens action. Furthermore, as my opposing counsel just acknowledged, Nelson does adopt a categorical approach under, for HEC. And that means that the proper focus is on what the plaintiff must plead in order to prevail in his civil claim and whether that alone demonstrates the invalidity of the conviction. The HEC issue is simple, and especially under that concession. In contrast, the merits issue is quite complicated. As your honors have acknowledged, there are open questions as to whether video or audio is meaningfully distinguishable and whether a doctor's office should be treated differently from someone, from an average citizen. Given those difficult, complicated questions, the prudent course here is for the court to decide the HEC issue that's fully briefed, that was the issue of decision below, and then remand for the district court to address the merits in the normal court. Other questions? Thank you. We'll take the matter under submission. You were appointed by the court as amicus, and we're grateful for your service.
judges: Garland, Henderson, Millett